# EXHIBIT A



# BROKER-SALESPERSON CONTRACT
## (Employee Tax Status)

By this Broker-Salesperson Contract (Employee Tax Status) ("**BSC**") entered into by and between CBRE, Inc., a Delaware corporation ("**CBRE**") and Kostas Stoilas ("**Salesperson**"), CBRE hereby employs Salesperson as a real estate salesperson, and CBRE and Salesperson agree to the following conditions and details of their relationship.

1. CBRE is licensed under the laws of the various states in which it has offices to sell or otherwise deal in real estate and maintains offices for the operation of a general real estate brokerage business. Salesperson shall remain continuously licensed by the state in which Salesperson is officed to sell real estate and shall pay the required licensing fee and any business license fees or taxes. If Salesperson voluntarily joins the local real estate board, or if Salesperson's membership is required by the local real estate board rules, Salesperson will comply with such rules and shall pay the initiation fees, dues and any other costs of membership.

2. Salesperson shall be either (a) duly licensed as a salesperson under the laws of the state in which Salesperson is officed; or (b) duly licensed as a broker under the laws of the state in which Salesperson is officed and hired by CBRE as a real estate salesperson.

3. Salesperson shall read and be governed by CBRE's General Rules and Policies in effect as of the date of this BSC, and any modifications, additions, or amendments thereto (herein collectively referred to as "**CBRE's Policies**") and CBRE's standard office procedures which shall be binding on CBRE and Salesperson. CBRE's Policies are hereby incorporated in this BSC and shall constitute a part hereof, as though set forth in full. Any change in CBRE's Policies shall be adopted by CBRE in its sole discretion, without consultation with Salesperson, and shall be effective and constitute an amendment and modification of this BSC upon receipt by Salesperson of a copy thereof. If there is any conflict between the provisions of this BSC and CBRE's Policies, CBRE's Policies shall govern. CBRE and Salesperson also agree that as used in the CBRE's Policies, the terms "salesperson" and "employee" shall include Salesperson.

4. Salesperson shall abide by all codes of ethics, rules and/or regulations of any real estate board or organization of which Salesperson is a member.

5. CBRE agrees to make available to Salesperson all current listings in the office except such as CBRE may find expedient to handle itself or to place solely with another salesperson or salespeople.

6. Salesperson agrees that Salesperson shall not make any misrepresentations of, or fail to disclose material facts to any prospective purchaser, seller, landlord, tenant or other person, and Salesperson shall use due diligence to verify all facts and information which Salesperson furnishes to such person. No agreements (other than the usual cooperative commission agreements with other brokers) shall be made by Salesperson with brokers or salespeople or any other person or persons not employed by CBRE without the prior written consent of CBRE.

7. Within limitations set by CBRE, CBRE shall provide Salesperson with advertising and with necessary office equipment, including desk, telephone, computer, copier, signs, business cards, stationery, secretarial service, and supervisory assistance in connection with Salesperson's work. All advertising and publicity releases shall be approved and placed by CBRE.

8. A. In the event any transaction in which Salesperson is involved results in a dispute, litigation, settlement, compromise, judgment or any other legal expense: (i) Salesperson shall cooperate with CBRE; (ii) CBRE and Salesperson shall share all expenses, costs, expenditures and the payment of money in settlement, compromise, judgment, court costs, attorneys' fees and other disbursements in any way connected therewith, in the same proportion as they normally would have shared the commission resulting from such transaction if there were no dispute or litigation, without regard to the amount of the commission which each has actually realized from such transaction, if any; (iii) CBRE reserves the exclusive right to determine whether or not any litigation or dispute shall be prosecuted, defended, compromised or settled, and also the exclusive right to determine the terms and conditions of any compromise or settlement and whether or not legal expense shall be incurred; (iv) Salesperson shall

-1-

have no authority to institute any legal action in connection with any transaction without the express written consent of CBRE; and (v) in the event it becomes necessary for Salesperson to defend any legal or disciplinary action brought against Salesperson which in any way relates to Salesperson's activity with CBRE, Salesperson shall immediately notify CBRE thereof before undertaking such defense and shall cooperate fully with CBRE in defending such action so that CBRE's interests, including without limitation its reputation and good name, will be fully protected.

B.   Notwithstanding anything in paragraph 8A to the contrary, neither CBRE nor Salesperson waives any claim either may have against the other for conduct by the other which would give rise to liability.

C.   The provisions of this paragraph 8 shall survive the termination of this BSC.

D.   Salesperson acknowledges that CBRE has had and continues to have interests and relationships with entities and individuals, including past and present clients, which transcend a single transaction. As a result, Salesperson agrees that CBRE shall have the sole discretion to pursue the collection of, to compromise or to waive, in whole or part, the payment of any commission, fee or other compensation in which Salesperson may have an interest. Salesperson agrees that if CBRE for any reason in its sole discretion determines that it will not pursue the collection of all or a portion of a commission, fee or other compensation in which Salesperson may have an interest, Salesperson shall have no claim for payment or compensation from CBRE for any portion of such unpaid commission, fee or other compensation.

Initials: _____        _____
              CBRE                        Salesperson

9.   In addition to CBRE's Policies, Salesperson shall have the following additional obligations:

A.   Salesperson shall obtain CBRE's written approval prior to obligating CBRE to pay any fees or charges including those incurred in connection with the opening of escrows or in the making of title searches.

B.   Salesperson shall notify CBRE within 24 hours after opening an escrow that an escrow has been opened. Such notification shall be by means of a distribution sheet, the form of which will be provided by CBRE. All money or documents received by Salesperson in connection with any transaction of CBRE shall be delivered to CBRE immediately.

C.   Salesperson shall not actively participate in any public hearing which involves the business of CBRE or its clients without the prior approval of CBRE.

D.   Salesperson shall devote Salesperson's full business time and best efforts toward furthering the interests of CBRE, and Salesperson agrees to conduct Salesperson's activities and regulate Salesperson's habits so as to maintain and to increase rather than diminish the good will and reputation of CBRE. Nothing contained herein shall preclude or prohibit Salesperson from engaging in personal matters, including handling personal investments, during normal business hours, so long as such activities do not create a conflict of interest, violate CBRE's Personal Real Estate Ownership Policy as set forth in CBRE's Policies, or interfere with Salesperson's normal duties and responsibilities as an employee of CBRE.

E.   Salesperson shall furnish Salesperson's own transportation and pay all transportation and travel expenses, and will carry in force insurance as may be required from time to time in CBRE's Policies; Salesperson shall furnish satisfactory evidence of such insurance to CBRE upon request.

F.   Salesperson shall not obligate CBRE in any way for the purchase or lease of materials, services, real or personal property, or anything else, without first obtaining the written consent of CBRE. Salesperson shall use only real estate transactional forms in accordance with applicable state law, and shall not engage in the practice of law. All commission agreements to which CBRE is a party shall be made on CBRE approved forms or reviewed by CBRE prior to execution. CBRE reserves the right to reject or cancel any listing of property it deems unsatisfactory in CBRE's sole discretion.

10.   Commissions shall be paid to Salesperson in accordance with the provisions of CBRE's Policies.

11. If any dispute arises between Salesperson and any other broker or salesperson (whether or not working for CBRE), CBRE, in its sole discretion, shall have the right to settle the dispute and such settlement shall be binding upon Salesperson.

12. To minimize the possibility for conflict of interest with CBRE's clients, to allow Salesperson to enjoy the investment benefits derived from the ownership of real estate, and to ensure that Salesperson spends full time on the business of CBRE, Salesperson may make any form of personal investment in real estate and interests therein provided that such investments conform to CBRE's Personal Real Estate Ownership Policy as set forth in CBRE's Policies.

13. If any portion of this BSC is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the BSC shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

14. CBRE and Salesperson agree to all the foregoing terms and conditions and to use their skill, efforts, and abilities in cooperating to carry out the terms of this BSC for the mutual benefit of CBRE and Salesperson.

15. Salesperson's Application For Employment ("**Application**"), if any, is incorporated as part of this BSC as if set forth in full. With the exception of Salesperson's Application, the Indemnity Agreement ("**IA**"), any Addendum to this BSC ("**Addendum**"), and any documents to comply with federal immigration laws signed by Salesperson prior to or concurrent with the execution of this BSC, all prior agreements between the parties have been incorporated into this BSC, which constitutes the entire contract between CBRE and Salesperson. The terms of this BSC, any Addendum and the IA are intended by the parties as a final expression of their agreement with respect to such terms as are included herein and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this BSC, any Addendum and the IA constitutes the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this BSC, any Addendum and the IA.

16. This BSC may be terminated at will by either party hereto, at any time with or without cause, upon written notice to the other, in which event CBRE and Salesperson will be governed by the Termination Policy set forth in CBRE's Policies. Salesperson acknowledges that no promise or representation, express or implied, has been made to Salesperson that this BSC will be for a specified period of time.

17. A. Salesperson acknowledges that all forms, documents, papers, records, files, computer software, application systems and programs, and other materials prepared or received by Salesperson which pertain to CBRE's business, including letters to Salesperson and copies of letters sent by Salesperson, are the property of CBRE. Salesperson further acknowledges that all information, including information in machine readable form (e.g., magnetic disk, magnetic tape, etc.), disclosed to or developed by Salesperson during Salesperson's employment by CBRE relating to CBRE's business, including without limitation, CBRE's listings, the identity of and information concerning potential or actual clients, and specialized techniques developed or used by CBRE (other than disclosure of specific listings in the ordinary course of business) are the exclusive property of CBRE. Unless CBRE informs Salesperson that any such information is not to be taken from CBRE's office, nothing contained herein shall prohibit Salesperson from using and retaining such documents or equipment away from CBRE's offices so long as such actions are in furtherance of Salesperson's duties contemplated by this BSC.

B. Salesperson agrees to maintain as confidential and not to disclose to others or use for any commercial purpose, for the duration of Salesperson's employment with CBRE and for a period of two years following the termination of Salesperson's employment with CBRE, any confidential information to which the Salesperson has access or exposure as a result of the performance of Salesperson's services for CBRE. "**Confidential Information**" is defined as any of CBRE's information, without regard to form, which is not commonly known by or available to the public and which information (a) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Such Confidential Information includes, but is not limited to, CBRE's listings, the identity of and information concerning potential or actual clients, and specialized techniques developed or used by CBRE (other than disclosure of specific listings in the ordinary course of business).

-3-

C.  In order to preserve the confidentiality of the information referred to in paragraphs 17A and 17B, and to protect CBRE's proprietary interest in its trade secrets, Salesperson agrees that for a period of one year following the termination of this BSC, (i) Salesperson will not solicit, on Salesperson's own behalf or on behalf of any other person, firm, company or corporation, any of CBRE's clients whom Salesperson solicited or with whom Salesperson dealt or became acquainted while Salesperson was employed with CBRE, and (ii) Salesperson will not solicit for employment, on Salesperson's own behalf or on behalf of any other person, firm, company or corporation, any of CBRE's salespeople or employees.

Initials: _____         _____
                CBRE                  Salesperson

18. In the event of any dispute or claim between Salesperson and CBRE (including all of its employees, agents, subsidiary and affiliated entities, benefit plans, benefit plans' sponsors, fiduciaries, administrators, affiliates; and all successors and assigns of any of them), but excluding any dispute which CBRE is authorized to resolve pursuant to any other provision contained in this or any other contract with CBRE (including but not limited to paragraph 11, above) or CBRE's General Rules & Policies (including but not limited to Section 10.11), Salesperson and CBRE jointly agree to submit all such disputes or claims to confidential binding arbitration and waive any right to a jury trial.  The claims and disputes subject to arbitration include all claims arising from or related to Salesperson's employment or the termination of Salesperson's employment, including but not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one); and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance. All claims or disputes subject to arbitration, other than claims seeking to enforce rights under Section 7 of the National Labor Relations Act, must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action. The arbitration (i) shall be conducted pursuant to the provisions of the arbitration rules of the state in which Salesperson is or was last employed by CBRE (e.g., in California, the California Arbitration Act) or in absence of state law, the Federal Arbitration Act; and (ii) shall be heard before a retired State or Federal judge in the county containing CBRE's office in which Salesperson was last employed.   CBRE shall pay for all fees and costs of the Arbitrator, however, each party shall pay for its own costs and attorneys' fees, if any, except as otherwise required by law.

19. Salesperson shall be classified for tax purposes as an employee and CBRE shall, to the extent it is required to do so, file all necessary tax information and reports to the federal, state and local taxing authorities, including Internal Revenue Service W-2, to report the income Salesperson earned under this BSC.  CBRE shall withhold income taxes, social security taxes, disability or unemployment insurance payments, or any other assessments or taxes from the commissions of the salesperson unless otherwise required by law.

20. This BSC is executed on November 4, 2013.

CBRE, INC.                                      SALESPERSON:

By: _____            By: _____
      Patricia A. Nooney                           Kostas Stoilas
      Title:  Senior Managing Director

# CBRE

## INDEMNITY AGREEMENT

In consideration of the mutual promises below, CBRE, Inc. ("**CBRE**") and you, the professional named below, enter into this Indemnity Agreement ("**Agreement**").

1.  <u>The Policy.</u> As of the Effective Date, CBRE maintains and causes the premium to be paid for a professional indemnity insurance policy naming CBRE as the insured (**the "Policy"**); provided however, that CBRE may modify, cancel or not renew the Policy in its sole discretion.

2.  <u>Indemnification.</u> CBRE will indemnify and hold you harmless from damage or expense arising from any dispute, litigation or claim made by a third party against you and/or CBRE on or after the Effective Date arising out of or in connection with your professional activities which is covered by the Policy ("**Covered Claim**"). If the Policy is no longer in effect, CBRE will make its determination whether a claim is a Covered Claim with reference to the terms of the Policy last in effect. With respect to Covered Claims, CBRE will provide defense counsel of its choice, pay all legal fees, costs and expenses and will make all payments in settlement or in satisfaction of any judgment or award with no contribution from you. However, if it is determined that your conduct giving rise (in whole or in part) to a Covered Claim was intentional and/or reckless, CBRE shall have the right to recover amounts paid by CBRE under this paragraph, which right shall be in addition to any rights CBRE may have under your employment agreement.

3.  <u>Payments.</u> You authorize CBRE to deduct from your after-tax compensation an amount established by CBRE from time-to-time upon prior written notice to you, which amount shall be the same for all employees or qualified real estate agents in a similar position. You acknowledge that these payments are non-refundable for any reason. If your employment with CBRE terminates for any reason, CBRE's indemnification obligations will continue with respect to any Covered Claim, but payments will no longer be deducted from your compensation (except for Payments accrued and unpaid as of the date of termination).

4.  <u>Non-Covered Claims.</u> Claims made prior to the Effective Date and claims made on or after the Effective Date that CBRE determines are not covered by the Policy will be governed by your employment agreement and your prior agreement with CBRE regarding this subject matter.

5.  <u>Arbitration.</u> You and CBRE agree to submit any dispute or claim relating to this Agreement to confidential binding arbitration and to waive any right to a jury trial. All claims or disputes subject to arbitration, other than claims seeking to enforce rights under Section 7 of the National Labor Relations Act, must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action. The arbitration (i) shall be conducted pursuant to the arbitration rules of the state in which CBRE's office in which you were last employed is located (e.g., in California, the California Arbitration Act) or in absence of relevant state law, the Federal Arbitration Act; and (ii) shall be heard before a retired state or federal judge in the county in which such office is located. CBRE will pay the fees and costs of the Arbitrator; however, each party will pay its own costs and attorneys' fees, if any, except as otherwise required by law.

6.  <u>Termination.</u> Either party may terminate this Agreement for any reason or no reason by giving the other party thirty (30) days written notice ("**Date of Termination**").

This Agreement shall be effective on November ___, 2013 ("**Effective Date**") and was executed on November ___, 2013.

CBRE, INC.                                          PROFESSIONAL:

By: _____          _____
     Patricia A. Nooney                                    Kostas Stoilas
Title: Senior Managing Director

## FIRST ADDENDUM TO BROKER-SALESPERSON CONTRACT

This First Addendum to Broker-Salesperson Contract ("**First Addendum**") shall supplement and amend the Broker-Salesperson Contract (Employee Tax Status) ("**BSC**") between CBRE, Inc. ("**CBRE**"), and Kostas Stoilas ("**Salesperson**") entered into concurrently with this First Addendum.

21.   Other Agreements:

    21.1   Salesperson has also executed concurrently CBRE's Indemnity Agreement ("**IA**").

    21.2   The BSC (paragraphs 1 through 20), this First Addendum and the IA shall be collectively referred to as the "**Employment Agreements.**"

    21.3   The provisions of this First Addendum shall supersede any inconsistent provisions contained in the BSC, the IA and/or CBRE's General Rules & Policies ("**GR&P**").

22.   The Employment Agreements shall be effective on December 2, 2013 ("**Effective Date**").

23.   As an inducement to Salesperson entering into the Employment Agreements and as an incentive for Salesperson to remain employed by CBRE through the seventh anniversary of the Effective Date ("**Term**"), CBRE agrees to pay to Salesperson a "**Sign On Bonus**" in the sum of $140,000, payable as set forth in paragraph 23.1 and subject to the terms and conditions in paragraphs 23.2 through 23.7:

    23.1   The Sign On Bonus will be paid in cash in two installments: (i) fifty percent (50%) of the Sign On Bonus on or before thirty (30) days after the later of the Execution Date and the Effective Date, and (ii) fifty percent (50%) of the Sign On Bonus on the first anniversary of the Effective Date ("**Payment Dates**").

    23.2   Should Salesperson's employment be terminated by CBRE for Cause (as defined below) or by Salesperson for other than Good Reason (as defined below) on a date prior to a Payment Date, CBRE will not pay to Salesperson the Sign On Bonus specified in paragraph 23.1, above.

    23.3   If Salesperson's employment is terminated by CBRE for other than Cause or by Salesperson for Good Reason on a date prior to a Payment Date, CBRE shall nonetheless pay to Salesperson on the Payment Dates specified in paragraph 23.1, above, the Sign On Bonus that is unpaid as of the Date of Termination.

    23.4   Tax reporting:  CBRE will report the payment of the Sign On Bonus as taxable income to Salesperson (on applicable Form 1099) in the year paid for federal, state and local income tax purposes.

23.5    Should Salesperson's employment with CBRE be terminated on a date prior to the end of the Term ("**Date of Termination**") (i) by CBRE for "Cause" (as defined below) or (ii) voluntarily by Salesperson other than for "Good Reason" (as ~~thirty (30)~~ *(90) ninety* defined below), Salesperson promises to repay to CBRE within ~~thirty (30)~~ days of the Date of Termination the following portion of the Sign On Bonus that has been paid to Salesperson as of the Date of Termination:

(a)     If the Date of Termination is prior to the third anniversary of the Effective Date, Salesperson will repay to CBRE the full amount of the Sign On Bonus.

(b)     If the Date of Termination is on or after the third anniversary but prior to the fourth anniversary of the Effective Date, Salesperson will repay to CBRE fifty percent (50%) of the Sign On Bonus.

(c)     If the Date of Termination is on or after the fourth anniversary but prior to the fifth anniversary of the Effective Date, Salesperson will repay to CBRE thirty-seven and one-half percent (37.5%) of the Sign On Bonus.

(d)     If the Date of Termination is on or after the fifth anniversary but prior to the sixth anniversary of the Effective Date, Salesperson will repay to CBRE twenty-five percent (25%) of the Sign On Bonus.

(e)     If the Date of Termination is on or after the sixth anniversary but prior to the seventh anniversary of the Effective Date, Salesperson will repay to CBRE twelve and one-half percent (12.5%) of the Sign On Bonus.

23.6    As used herein, the term "**Cause**" shall mean: (i) an uncured material breach of one or more of the material terms and conditions of the Employment Agreements, or (ii) an uncured material violation of CBRE's published policies without permission or just cause, or (iii) Salesperson's substantial and continuing non-performance under the Employment Agreements, or (iv) any act of fraud, embezzlement or other dishonesty in connection with Salesperson's duties and obligations, or (v) any intentional act by Salesperson that would jeopardize the real estate brokerage license of CBRE, or (vi) loss of Salesperson's real estate license, or (vii) suspension of Salesperson's real estate license, or (viii) the commission of any illegal and/or unethical act in connection with Salesperson's business activities that would adversely and materially impact on the character, goodwill and public reputation of CBRE, or (ix) breach of the confidentiality provisions contained in paragraph 25, below.  CBRE shall provide Salesperson with notice of any breach and Salesperson shall be given a reasonable opportunity to cure the breach for any matters specified in subparts (i), (ii), (iii), (v), and (vii).  CBRE shall state in the notice what CBRE contends is a reasonable time period to cure the breach.

23.7    As used herein, the term **"Good Reason"** shall mean: (i) a material diminution or material adverse change in Salesperson's authority, duties, job title, benefits, support or position of responsibility or the nature of Salesperson's duties or the scope of his responsibilities that does not also apply to all salespeople in similar position to Salesperson; or (ii) an uncured material breach by CBRE of any provision of the Employment Agreements. Salesperson shall provide CBRE with notice of any diminution, change, act, action or breach described in subparts (i) through (ii) and CBRE shall be given a reasonable opportunity to cure. Salesperson shall state in the notice what Salesperson contends is a reasonable time period to cure the breach.

24.    Commencing on the Effective Date, CBRE shall pay to Salesperson commissions based upon the terms, conditions and schedule in Section 10.12 of the GR&P with the following exceptions:

24.1    The term **"Salesperson's Gross Commissions"** shall mean the gross amount of the commissions paid to CBRE and attributable to Salesperson, individually, before any split with CBRE, but after allocation to other salespeople and profit centers and other expenses taken "off the top" of the commission.

24.2    The term **"Salesperson's Team"** shall mean Rian Smith, Kostas Stoilas and Kris Courier.

24.3    For the period from the Effective Date to first anniversary of the Effective Date, CBRE will pay to Salesperson an enhanced split of sixty-five percent (65%) of Salesperson's Gross Commissions attributable to Salesperson for all business that is procured by Salesperson's Team and relates to a client that Salesperson's Team had previous represented in lieu of the schedule in Section 10.12 of the GR&P.

24.4    For the period from the first anniversary of the Effective Date to second anniversary of the Effective Date, CBRE will pay to Salesperson an enhanced split of sixty percent (60%) of Salesperson's Gross Commissions attributable to Salesperson for all business that is procured by Salesperson's Team and relates to a client that Salesperson's Team had previous represented in lieu of the schedule in Section 10.12 of the GR&P.

24.5    For all business that is not procured by Salesperson's Team after the Effective Date and for all commissions paid from and after the second anniversary of the Effective Date, CBRE will pay to Salesperson commissions pursuant to the schedule and terms of the then current commission schedule contained in Section 10.12 of the GR&P.

25.    The terms and conditions of this First Addendum are personal to Salesperson and must be treated as "highly confidential and personal." From and after the earlier of the Effective Date or the Execution Date, Salesperson may not disclose the existence of this First Addendum or any of its terms and conditions to any third party, other than Salesperson's

Team, Salesperson's legal, tax and financial advisors and Salesperson's immediate family.

26.   For the Term, CBRE shall reimburse Salesperson's Team for up to $10,000.00 annually for reasonable travel and entertainment related business expenses incurred by the Salesperson after submission of the required receipts and back-up information.

27.   General Terms:

27.1   The Employment Agreements are the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersede and merge all prior or contemporaneous representations, discussions, proposals, negotiations, conditions, communications and agreements, whether written or oral, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom, with the exception of the provisions of the Recruitment Agreement executed on October 8, 2013 the provisions of which shall remain in full force and effect.

27.2   No change or modification of the Employment Agreements shall be valid or binding upon the parties unless and until the same is in writing and signed by the party against whom enforcement of such change or modification is sought.

27.3   The waiver by any party of a breach or violation of any provision of the Employment Agreements shall not operate as or be construed to be a waiver of any subsequent breach. Further, no party shall be deemed to have waived any provision of or right under the Employment Agreements unless such waiver is set forth in writing signed by the party against whom waiver is asserted.

27.4   Any right, power, or remedy provided under the Employment Agreements to any party hereto shall be cumulative and in addition to any other right, power or remedy provided under the Employment Agreements now or hereafter existing at law or in equity, and may be exercised singularly or concurrently.

27.5   None of the Employment Agreements shall be construed more strictly against any party hereto merely by the virtue of the fact that such Employment Agreements may have been drafted or prepared by such party or its counsel, it being recognized that all of the parties hereto have contributed substantially and materially to their preparation and that the Employment Agreements have been the subject of negotiations between the parties and as a product of that negotiation.

27.6   In the event that any one or more of the provisions of the Employment Agreements shall be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions of the Employment Agreements shall not be affected thereby.

27.7   The Employment Agreements shall not be assignable by Salesperson. The Employment Agreements may be assigned by CBRE to a person or entity which is an affiliate or a successor in interest and which conducts substantially all of the business operations of CBRE. Upon such assignment, the rights and obligations of CBRE under the Employment Agreements shall become the rights and obligations of such affiliate or successor person or entity.

27.8   The Employment Agreements shall inure to the benefit of and be binding upon the parties hereto and their respective successors in interest.

27.9   Salesperson is required to maintain a real estate license.

27.10  CBRE is an "at will" employer, which means that either Salesperson or CBRE may terminate the Employment Agreements at any time with or without notice or Cause.

27.11  The Employment Agreements may be executed in counterpart originals.

27.12  Salesperson agrees that Salesperson has sought and relied upon independent legal and tax advice, as Salesperson has deemed necessary, in entering into the Employment Agreements.

28.  Salesperson shall be classified as a salesperson and shall have the honorary – non-corporate – title of Senior Associate.

29.  Salesperson makes the following representations regarding Salesperson's employment agreement with his former employer, Cushman & Wakefield ("C&W").

29.1   Salesperson has a written employment agreement with C&W ("C&W Agreement").

29.2   Salesperson believes that neither Salesperson's employment with CBRE nor any provision of the Contract or this First Addendum, nor the services contemplated to be rendered by Salesperson pursuant to the Contract and this First Addendum, violate or breach any terms of the C&W Agreement.

29.3   Salesperson agrees that while employed by CBRE, Salesperson will not violate or breach any of the terms or conditions of any employment agreement with C&W applicable to Salesperson after the termination of Salesperson's employment with C&W, including the C&W Agreement. Notwithstanding the foregoing, in the event of a violation or breach or an alleged violation or breach of the C&W employment agreement by Salesperson, the sole remedies of the parties shall be as set forth in Section 30, below.

30.  In the event of a claim, lawsuit, arbitration claim, or other action against Salesperson and/or CBRE by C&W or its successor in connection with Salesperson's termination of

employment with C&W or its successor, and/or entering into employment with CBRE or arising from Salesperson's performance of services for CBRE ("C&W Claim"), the parties shall have the following rights:

30.1   Should the C&W Claim result in an order or judgment or a settlement agreement that CBRE is required to pay to C&W or its successor commissions or fees earned by and paid to Salesperson, Salesperson agrees to pay to CBRE the share of such fees paid by CBRE to Salesperson.

30.2   Should the C&W Claim result in either (i) a settlement agreement between Salesperson, CBRE and C&W or (ii) an order for permanent injunctive relief entered by a Court in favor of C&W or its successor pursuant to the terms of an employment agreement with C&W or otherwise, either of which in any material way prevents or restricts Salesperson from conducting the business of real estate salesperson for CBRE, CBRE shall have the right to terminate the Employment Agreements and such termination – if exercised by CBRE – shall be considered for Cause.

30.3   CBRE and Salesperson will each be responsible for its or his own legal fees and costs incurred in connection with such C&W Claim.

31.   The provisions of the arbitration clause (paragraph 18) of the BSC shall also apply to the Employment Agreements.

32.   The Employment Agreements are contingent upon satisfactory results on a background investigation and reference check of Salesperson ("Background Check") that will be conducted at the CBRE's expense. The Background Check includes, but is not limited to a satisfactory criminal record check and may include a drug test. Salesperson is advised not to resign or leave Salesperson's current employer or turn down other employment opportunities until notified that Salesperson has passed the Background Check. Should the Background Check not be completed by the Effective Date, the Effective Date and Salesperson's employment with CBRE shall be extended until such time as the Background Check is completed and CBRE has notified Salesperson that Salesperson passed.

33.   The following amendments shall apply to the provisions of paragraph 17 of the BSC:

33.1   Paragraph 17 shall not apply to any forms, documents, papers, records, files, computer software, application systems and programs, and other materials prepared or received by Salesperson prior to the Effective Date.

33.2   Paragraph 17C shall not apply to (i) clients with whom Salesperson has had a business relationship, has had prior contact, and/or had knowledge of the client's particular needs prior to the Effective Date and (ii) clients who are established or procured by Salesperson while employed by CBRE. The provisions of paragraph 17C shall apply to those clients who are referred to Salesperson by CBRE or

-6-

another salesperson employed by or associated with CBRE and with whom Salesperson had no prior contact or business dealings.

33.3   Salesperson shall not have violated paragraph 17B if Salesperson is required by law or order of a court to disclose any Confidential Information. Confidential Information does not include information known to Salesperson through sources other than CBRE.

33.4   Nothing contained in paragraph 17 shall prohibit Salesperson from using and retaining any documents or equipment away from CBRE's offices so long as such actions are in furtherance of Salesperson's duties contemplated by the Employment Agreements.

34.   Commencing on the first day of the month coinciding with or following the date of hire (those whom begin employment on the first day of the month, become eligible that same day), Employee will be eligible to participate in CBRE's corporate benefits package, which includes medical, dental, vision, disability, health care and dependent care reimbursement accounts, life and AD&D insurance.

34.1   The procedures, conditions and terms of participation are summarized on Attachment "A" annexed hereto. Employee must make all benefit elections within 30 days from the Effective Date.  Please refer to Attachment "A" for enrollment information for all benefit plans and important deadlines.

34.2   Eligibility for the CBRE 401(k) Plan is effective beginning on the date of hire. However, Salesperson's active participation in the Plan begins with the first pay period after Salesperson contacts Merrill Lynch, the record keeper for the CB Richard Ellis 401(k) Plan, to designate Salesperson's contribution percentage and make Salesperson's investment selections. It may take up to seven business days to transmit Salesperson's data and establish eligibility record in Merrill Lynch's system.

35.   This First Addendum is executed on November _4_, 2013 ("**Execution Date**").


CBRE, INC.,                                              SALESPERSON:
a Delaware Corporation


By: _____          By: _____
    James Reid                                              Kostas Stoilas
    President, Eastern Division


-7-

## Attachment "A"

Participation in the CBRE Benefits Program, which includes medical, dental, vision, disability, health care and child care reimbursement accounts, life and AD&D insurance, commences on the first day of the month coinciding with or following the date of hire (those whom begin employment on the first day of the month, become eligible that same day).  If you are classified as a "Qualified Real Estate Agent" (QREA) and not an "employee," you are not eligible to establish a child care or health care reimbursement account.

CBRE's enrollment process is online at www.cbrebenefitconnect.com. A system-generated email is sent to newly eligible employees with enrollment instructions and deadline information. If there is a delay in assigning a work email address to you upon the start of your employment, resulting in you not receiving the enrollment instruction email, you are still responsible to access the online enrollment system to make your benefit elections before the deadline. Your eligibility data will be set up online approximately five (5) business days after your new hire paperwork is completed and entered into the payroll system.

You must make your benefit elections within 30 days from your hire date.

Benefit reference materials are available on-line through our Company Intranet, the Navigator. You can access the Navigator at http://navigator.cbre.com <http://navigator.cbre.com/> (benefit-related information is found on the Navigator under the Departments tab, Human Resources, Benefits). Among other things, you will have access to a recorded online benefit orientation. Reference materials are also available via the resources tab on the enrollment site. If you do not have Internet access, contact the HR Service Center for assistance. Again, it is critical that you enroll immediately following the start of your employment because you have 30 days from your date of hire to complete the enrollment process.

If you are classified as an "employee" and not a "Qualified Real Estate Agent (QREA)," you are eligible to participate in the 401(K) Plan on your date of hire. However, your active participation begins with the first pay period after you contact Bank of America/Merrill Lynch, the record keeper for the CBRE 401(k) Plan, to designate your contribution percentage and make your investment selections.  It may take up to a week to transmit your hire information to the recordkeeper and get it set up on their system before you can enroll. To enroll in the Plan, access Benefits OnLine® at www.benefits.ml.com and follow the prompts. You will need a User ID and Password which you can create by following the "Create User ID" link on the Welcome Page. For assistance with enrollment or with questions about the Plan, please call the Retirement & Benefits Contact Center at (888) 363-2385. Representatives are available from 7 a.m. through 9 p.m. (Central Time).

-8-